MICHAEL J. WOODS *vs.* COMMERCIAL UNION INSURANCE
COMPANIES.

No. 99-P-612.

Suffolk. December 19, 2000. - August 28, 2001.

Present: JACOBS, KAPLAN, & GILLERMAN, JJ.

*Insurance,* Motor vehicle insurance, Underinsured motorist, Arbitration. *Arbitration,* Insurance, Parties.

An insurance company that was not a party to a proceeding to arbitrate a bodily injury claim was not bound by the arbitrator's award, nor was the possible absence of prejudice from late notice of the bodily injury claim sufficient to make the company a party to the arbitration; further, there was nothing that could be reasonably construed as the company's consent to the claimant's settling his bodily injury claim by arbitration. [400-403]

CIVIL ACTION commenced in the Superior Court Department on January 20, 1998.

The case was heard by *John C. Cratsley,* J., on motions for summary judgment.

*Richard L. Neumeier* for the defendant.

*Daniel J. Cardinal* for the plaintiff.

JACOBS, J. The plaintiff brought this action against Commercial Union Insurance Companies (C.U.) pursuant to G. L. c. 251, § 11, to confirm an arbitration award. Acting on cross motions for summary judgment, a Superior Court judge allowed that of the plaintiff. In its appeal, C.U. repeats the claim it made below, that it was not a party to the arbitration proceeding.[1] We agree with that contention and reverse the judgment.

---

[1] The parties devote a substantial part of their briefs to the issue of whether notice to C.U. of the plaintiff's claim was late or defective as matter of law and whether C.U. was prejudiced by late notice. See *Goodman* v. *American Cas. Co.,* 419 Mass. 138, 141 (1994) ("a late-notified insurer may deny underinsured motorist coverage only when it proves that it was prejudiced by the delay"). Given our conclusion that C.U. was not a party to the award in issue, we need not reach the issue of coverage.

*Background.* While operating a mail truck on July 9, 1996, in Wilmington, the plaintiff was involved in a collision with a vehicle operated by Nathan Balestrieri, and insured by the Commonwealth Mutual Insurance Company (Commonwealth) for up to $20,000 for bodily injury liability to a single individual. At the time, the plaintiff had the benefit of underinsurance coverage of $50,000 under his mother's policy with the defendant, C.U. The plaintiff and Commonwealth agreed to arbitrate the plaintiff's bodily injury claim against Balestrieri. Sometime prior to September 2, 1997, that claim was submitted to National Arbitration & Mediation (NAM) for arbitration. Under NAM's procedural rules, parties who agree to arbitration "initiate a case by submitting a jointly-executed submission form to NAM or by requesting NAM to invite another party to join in a submission to arbitration . . . ." The form submitted to NAM designated Michael Woods as "plaintiff" and Nathan Balestrieri as "defendant," and indicated that both liability and damages were at issue.[2] A representative of Commonwealth is listed as the contact person for Balestrieri. No mention of C.U. is contained in the submission form, nor is there any indication in the record that C.U. was aware of the arbitration proceeding before September of 1997.

By letter dated September 2, 1997, plaintiff's counsel informed C.U. that it was "being notified of the pending arbitration so as to be an included party in the same." The letter also identified the plaintiff's mother as C.U.'s insured and stated that "damages will exceed the applicable policy limits" under Commonwealth's bodily injury policy. By letter dated September 10, 1997, an adjuster from C.U. requested information concerning the accident, copies of medical records and bills, and a statement of lost wages. Records and bills relating to the plaintiff's medical treatment were forwarded to C.U. by plaintiff's counsel on October 10, 1997.

On or about October 7, 1997, NAM's regional manager

[2]The submission form also set forth a "HI/LOW LIMITATION" with indicated "PARAMETERS" of a "HIGH" of $20,000 and "LOW" of $10,000, together with an anomalous checking off of "UM Arbitration" from among the choices of "ADR PROCESS" listed. The other, unchecked, categories were "Non-Binding Mediation," "UIM Arbitration," "Paper Arbitration" and "Binding Arbitration."

telephoned the C.U. adjuster to request that C.U. participate in the arbitration. Because the adjuster refused, NAM did not send a submission form to C.U. and did not bill it an arbitration fee. NAM had previously received an arbitration fee from the plaintiff and from Commonwealth on behalf of Nathan Balestrieri. On November 17, 1997, the adjuster informed plaintiff's counsel that C.U. would not be attending the arbitration scheduled for November 24, 1997. At about that time plaintiff's counsel notified C.U. that it would be "contractually bound by the decision of the arbitrator as to any award in excess of the BI [bodily injury] policy, and that this office will seek to enforce said award even if Commercial Union should choose not to attend the arbitration."

By fax dated November 24, 1997, C.U. informed plaintiff's counsel it was still investigating whether or not it had been prejudiced by late notice of the claim, and that its investigation had been hindered by plaintiff's failure, until November 17, 1997, to supply information concerning his workers' compensation benefits. C.U. also raised questions concerning the bodily injury liability limit under Commonwealth's policy with Balestrieri and concerning plaintiff's and Balestrieri's "HI/LOW" agreement (see note 2, *supra*). C.U. indicated that "[b]ased on [these factors]" it was "not in any position to participate in [the scheduled] arbitration."

On November 24, 1997, an arbitration conducted by NAM was attended by the plaintiff, his counsel and a representative of Commonwealth. On November 26, 1997, the arbitrator rendered a decision, which included findings as to liability, causation and damage and an award in the "net amount" of $40,000 in favor of the plaintiff. Commonwealth paid $20,000 upon receipt of the arbitrator's decision. After receiving a copy of the decision together with the plaintiff's demand for payment of the excess $20,000 under its underinsurance coverage, C.U. notified plaintiff's counsel that it would not recognize the award. Soon thereafter, the plaintiff filed his complaint to confirm the arbitrator's award and, based thereon, to obtain a judgment ordering C.U. to pay him the disputed $20,000.

*Discussion.* The summary judgment record is devoid of any evidence that C.U. was a party to the arbitration. Neither the

submission form filed with NAM nor the arbitration award contained any reference to C.U. as being a party to, represented at, affected by or subject to the NAM arbitration proceeding. The underinsured motorist coverage provisions of the standard Massachusetts motor vehicle policy in effect in 1996, and continuing in effect to date, specify, in a form approved pursuant to G. L. c. 175, § 113A, that if agreement is not reached by the injured party and the underinsurance carrier as to liability or damages, "[a]rbitration will be used." Assuming that the summary judgment record reflects disagreement sufficient to implicate the obligation to arbitrate, nothing in that record indicates that the parties had agreed upon NAM as the arbitration agency or that either had resorted to court action under G. L. c. 251, § 2,[3] for an order compelling arbitration, or under G. L. c. 251, § 3,[4] for the appointment of an arbitrator. Also, while it is clear that the plaintiff invited C.U. to join in the NAM arbitration, there is no evidence that C.U. accepted that invitation or that the plaintiff applied to the Superior Court under G. L. c. 251, § 2A,[5] to consolidate the underinsurance arbitration with the NAM arbitration of the bodily injury claim. Whether C.U. acted reasonably in not accepting the invitation is irrelevant to this litigation.

It is arguable that, had an arbitrator been chosen by statute or

[3]General Laws c. 251, § 2, inserted by St. 1960, c. 374, § 1, provides that "[a] party aggrieved by the failure or refusal of another to proceed to arbitration under an agreement [to arbitrate] may apply to the superior court for an order directing the parties to proceed to arbitration."

[4]General Laws c. 251, § 3, inserted by St. 1960, c. 374, § 1, provides the following: "If the arbitration agreement provides a method of appointment of arbitrators, such method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or if an arbitrator appointed fails or is unable to act and his successor has not been duly appointed, the court on application of a party shall appoint an arbitrator. An arbitrator so appointed shall have all the powers of an arbitrator specifically named in the agreement."

[5]General Laws c. 251, § 2A, inserted by St. 1977, c. 414, provides that "[a] party aggrieved by the failure or refusal of another to agree to consolidate one arbitration proceeding with another or others, for which the method of appointment of the arbitrator or arbitrators is the same . . . may apply to the superior court for an order for such consolidation . . . ." We assume, without deciding, that in the absence of a designation of a method of appointment of the arbitrator in the underinsurance policy, this section would have been available to the plaintiff.

by a method agreed upon by the parties, the provisions of G. L. c. 251, § 5,[6] would have permitted that arbitrator to conduct an ex parte proceeding and render a binding award. Here, there is no indication that the NAM arbitrator was appointed or accepted with respect to C.U.'s underinsurance coverage or, as previously indicated, that the arbitrator, in his award, treated C.U. as a party. While the intendment of our arbitration statutes is to validate and efficiently enforce arbitration agreements and awards, the fundamental dictates of due process nevertheless must be observed. The possible absence of prejudice from late notice of the plaintiff's claim does not work to make C.U. a party to the NAM arbitration. In the circumstances, any award purporting to bind C.U. would have been in excess of the arbitrator's powers.

Relying on *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Authy.*, 397 Mass. 426 (1986), the judge ruled that C.U. was barred from seeking to avoid the NAM award because of its failure to timely move to vacate the award pursuant to G. L. c. 251, § 12.[7] In *Local 589*, the court held that the defendant employer, which had participated in an arbitration hearing, was precluded from attacking the award on jurisdictional grounds because it did not move to vacate the award within thirty days of delivery of a copy of the award pursuant to a cognate labor arbitration provision (G. L. c. 150C, § 11(*b*)). The policy underlying the strict enforcement of the thirty-day statutory rule "would seem to condemn the conduct of the defendant who ignored an award disfavorable to it, failed to move to vacate the award, and then sought to be given its day in court when the plaintiff brought suit in frustration to

---

[6]General Laws c. 251, § 5, inserted by St. 1960, c. 374, § 1, provides in pertinent part that an arbitrator may, after giving written notice to the parties of the appointed time and place of the arbitration hearing, "hear and determine the controversy upon the evidence produced notwithstanding the failure of a party duly notified to appear." The counterpart of this section in the Uniform Arbitration Act has been cited by a commentator as supporting ex parte arbitration without a court order compelling arbitration. See Domke on Commercial Arbitration § 18:04 (rev. ed. 2000).

[7]In pertinent part, G. L. c. 251, § 12, as amended by St. 1972, c. 200, § 1, provides that an application by a "party" to vacate an award "shall be made within thirty days after delivery of a copy of the award to the applicant . . . ."

have the arbitration award enforced. If the defendant's defenses were of such vital importance to it, the defendant nevertheless had an opportunity to raise them in the manner contemplated by statute." *Bernstein* v. *Gramercy Mills, Inc.*, 16 Mass. App. Ct. 403, 409-410 (1983), quoting from *Chauffeurs, Teamsters, Warehousemen & Helpers Local No. 135* v. *Jefferson Trucking Co.*, 628 F.2d 1023, 1027 (7th Cir. 1980), cert. denied, 449 U.S. 1125 (1981). These and similar cases under G. L. c. 251, § 12, and G. L. c. 150C, § 11(*b*), are distinguished, however, by the fact that the defendants there resisting enforcement of the awards were named and noticed parties in the arbitration proceeding. Here, C.U. merely rejected an invitation to become a third party to the NAM arbitration. Any application by C.U. to vacate the NAM award pursuant to G. L. c. 251, § 12, would have failed, not being that of a "party."

The defendant's position is further reinforced by the following provision of its underinsurance coverage: "If an injured person settles a claim as a result of an accident covered [by the underinsurance provision], we will pay that person only if the claim was settled with our consent. We will not be bound . . . by any judgment resulting from a lawsuit brought without our written consent. We will not, however, unreasonably withhold our consent." Even if an arbitration proceeding and award may be treated as a "lawsuit" and "judgment," plaintiff's notice to C.U. of the pending NAM arbitration may not reasonably be interpreted as a request for consent to such proceeding. Nor may C.U.'s written request of the plaintiff for further information, or its statement that it was "not in any position to participate," reasonably be construed as consent to the plaintiff settling his bodily injury claim by arbitration.[8]

*Judgment reversed.*

*Judgment for defendant.*

---

[8]Our decision is not to be interpreted as prohibiting the plaintiff from seeking any benefits to which he may be entitled pursuant to the underinsurance provisions of the C.U. policy held by his mother.